TIMOTHY CARROLL *vs.* ALFRED A. SANFORD, *et al.*

JUNE 29, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

*(1)   Attachment.   Curtesy Initiate.   Married Women.*
An estate of tenancy by the curtesy initiate is not attachable for the debts of the husband.

TRESPASS AND EJECTMENT.   Certified on agreed statement of facts.

JOHNSON, J.   This case has been certified to this court by the District Court of the Second Judicial District under Gen. Laws, 1909, cap. 298, § 4, upon the following

"AGREED STATEMENT OF FACTS.

"This is an action of trespass and ejectment brought by Timothy Carroll against Alfred A. Sanford and Nicholas Baker to recover possession of the following premises situate in the village of Wakefield, in the town of South Kingstown, and bounded and described as follows:

"Northerly on Mechanic street, a highway, so-called, one hundred and ten (110) feet; easterly on land now or formerly of the estate of John Caswell, deceased, one hundred and eight (108) feet more or less to land of the Narragansett Pier Railroad Company, southerly on land of said railroad company one hundred and ten (110) feet and westerly on land now or formerly of the estate of John R. Clark, deceased, one hundred and eight (108) feet more or less, in the line of the aforesaid street or highway," which said premises the said plaintiff Carroll alleges he is entitled to possession of for the life of Alfred A. Sanford.   He further alleges that said defendants are tenants at sufferance of the aforedescribed premises.

"In this case it is agreed by and between the parties thereto that the facts are as follows:

"(1)   The plaintiff, Timothy Carroll, prior to the beginning of this action, to wit, on the nineteenth day of May, A. D. 1910, began suit against one of the defendants, to wit, Alfred A. Sanford, and attached on his original writ therein all the estate, right, title, interest and property of the said Alfred A. Sanford in the premises described in this declaration; on the twenty-first day of November, A. D. 1910, the said plaintiff, Carroll, obtained judgment against the said Alfred A.. Sanford for $4,122.00 and costs; on the sixth day of February, A. D. 1911, the said plaintiff, Carroll, levied on all the estate, right, title, interest and property which said Alfred A. Sanford had at the time of the attachment on the original writ in the premises described in this declaration, by virtue of an execution issued in the case of *Timothy Carroll* vs. *Alfred A. Sanford,* Washington, No. 202, which said execution was returnable May 28, 1911; and on the fifteenth day of May, A. D. 1911, the said plaintiff, Carroll, caused to be sold on execution sale on said judgment all the estate, right, title, interest and property of the said Sanford in the premises described in this declaration, and at said sheriff's sale the said plaintiff, Carroll, became the purchaser thereof and took a sheriff's deed therefor, which said deed was recorded on June 13, 1911, in the Records of Land Evidence for the Town of South Kingstown, in Book 38, at page 18.

"(2)   At the time of the attachment of the premises described in this declaration on the original writ in the case of *Timothy Carroll* vs. *Alfred A. Sanford,* Washington, No. 202, said Alfred A. Sanford was not the owner in fee of said premises.   They were purchased entirely with the money of Ethel B. Sanford, wife of said Alfred A. Sanford, in 1908, and stood of record in truth and in fact as her property: There were, however, issue born alive of the marriage between Alfred A. Sanford and Ethel B. Sanford, capable of inheriting the property in event of the death of said Ethel B. Sanford,

which said children are now living.   At the time of the afore-
said attachment Ethel B. Sanford was alive.   She died on
the eighth day of September, 1910, intestate.   Subsequent
to the aforesaid attachment and to the said demise of the
said Ethel B. Sanford, but before the levy on the premises
described in this declaration by the said plaintiff, Carroll,
under his execution and before the execution sale aforesaid,
to wit, on the twentieth day of September, A. D. 1910, the
said Alfred A. Sanford conveyed by deed all his right, title
and interest in the premises described in this declaration to
the other of these defendants Nicholas Baker, which deed was
recorded the twentieth day of September, A. D. 1910, in the
Records of Land Evidence of the town of South Kingstown,
in Book 37, at page 521.

"(3)   At the time this action of trespass and ejectment
was begun and for some time prior to that time, said Alfred
A. Sanford was in possession of said premises, living in the
house on the tract in question, together with his said children.

"Due and legal notice to quit the said premises on or
before July 1, 1911, was served on the said defendants, by
the said plaintiff, Timothy Carroll.

"Upon the aforesaid agreed statement of facts the parties
pray the judgment of the court."

The question of law involved is:   Did Timothy Carroll,
by his attachment and subsequent purchase at execution
sale of the interest of Alfred A. Sanford in the property of his
wife in question, said interest at the time of said attachment
being that of curtesy initiate, but before said sale becoming
curtesy consummate, secure such title as will support this
present action against the said Alfred A. Sanford and his
grantee, said grant, however, having been made subsequent
to the attachment and the death of his wife, but prior to the
execution sale?

Section 1, cap. 246, Gen. Laws, 1909, provides that "The
real estate, chattels real, and personal estate, which are the
property of any woman before marriage, or which may become
the property of any woman after marriage, or which may be

acquired by her own industry, including damages recovered in suits or proceedings for her benefit and compensation for her property taken for public use and the proceeds of all such property shall be and remain her sole and separate property free from control of her husband." Under said cap. 246, Gen. Laws, 1909, is an estate by curtesy initiate attachable? Section 1 provides that the property enumerated "shall be and remain her sole and separate property free from control of her husband." Section 8 provides: "The right of the husband in the real estate of the wife as tenant by the curtesy . . . shall not be impaired by the provisions of this chapter." Section 12 provides that "The wife or her property shall not be liable for the contracts or the torts of her husband."

The first married women's act in this State appears in Pub. Laws, 1844, at page 270, entitled: "An Act concerning the property of Married Women." It is provided by the first section thereof as follows: "Section 1. The real estate, chattels real, household furniture, plate, jewels, stock or shares in the capital stock of any incorporated company of this state, or debts secured by mortgage on property within this state, which are the property of any woman before marriage, or which may become the property of any woman after marriage, shall be and are hereby so far secured to her sole and separate use, that the same, and the rents, profits and income thereof, shall not be liable to be attached, or in any way taken for the debts of the husband, either before or after his death; and upon the death of the husband in the lifetime of the wife shall be and remain her sole and separate property."

The words "so far secured to her sole and separate use, that the same, and the rents, profits and income thereof, shall not be liable to be attached, or in any way taken for the debts of the husband either before or after his death; and upon the death of the husband in the lifetime of the wife shall be and remain her sole and separate property," were continued in the revision of 1857, in Section 1 of Chapter 136

of the Revised Statutes. This statute was considered in *Greenwich National Bank* v. *Hall*, 11 R. I. 124. The court held that the husband's tenancy by the curtesy initiate is not subject to attachment for the husband's debts. At p. 127, the court, Durfee, C. J., says: "The statute expressly says that the real estate which is the property of any woman before marriage, or which may become her property after marriage, shall be so far secured to her sole and separate use that the same, and the rents, profits, and income thereof, shall not be liable to be attached or in any way taken for the debts of the husband, either before or after his death. The protection extends to the real estate which is the property of a woman before marriage; to the real estate which may become her property after marriage, and to all the rents, profits and income of her real estate of either description. Let us consider the question submitted to us first, with reference to the real estate which is her property before marriage. Certainly an exemption which covers the real estate which is the property of a woman before marriage, together with all the rents, profits, and income thereof, leaves nothing to be attached; for any interest which the husband acquires therein as the result of the marriage must necessarily be some portion of the real estate or of the rents, profits, or income thereof, all of which is exempt. Does the real estate which becomes her property after marriage stand upon any different footing? We think not. The two descriptions of property are coupled in the same sentence, and in a manner which shows that they were both intended to have the same immunity. That which is protected is not the real estate which the wife has at the time of the attachment, but the real estate which was her property before or which becomes her property after marriage. And this construction, based on the letter of the statute, is in keeping with its spirit. The design was to secure the estate during the life of the wife from molestation by the creditors of the husband, and this design is promoted by holding that during her life he simply as husband has no interest in her real estate

which can be attached in any suit to which she is not a party."

The next change in the statute appears in the revision of 1872, Gen. Stat., cap. 152, § 1, — "The real estate, chattels real, and personal estate, which are the property of any woman before marriage, or which may become the property of any woman after marriage, or which may be acquired by her own industry, shall be absolutely secured to her sole and separate use; neither the same, nor the rents, profits, or income of the same, nor any part thereof, shall be liable to be attached, or in any way taken, for the debts of the husband either before or after his death; and upon the death of the husband in the lifetime of the wife, shall be and remain her sole and separate property."

This section was considered *In re* the Voting Laws, 12 R. I. 586. The opinion stated that the law of 1844 did not in any way affect the right of the husband to vote under Article 2, Section 1, of the constitution, upon the property of his wife, so long as she left him in the enjoyment of it. Then at page 592: "The law of 1844 remained without material change until the General Statutes went into effect, December 2, 1872. The General Statutes introduced an important modification by enacting that the real property of a married woman 'shall be *absolutely* secured to her sole and separate use,' instead of 'so far secured to her sole and separate use that the same, and the rents, profits, and income thereof, shall not be liable to be attached or in any way taken for the debts of the husband.' It is true the old provision, that the husband may receive the rents and profits until the persons who are held for them are notified in writing by the wife not to pay them to him, remains unaltered. But this does not authorize us to conclude that the modification is of no effect. It is easy to construe that provision as being simply in the nature of a license or permission from his wife, which may be presumed until it is expressly repudiated or revoked. But there can be no estate by marital right in property which is absolutely secured to the sole and

separate use of the wife. The estate is utterly incompatible with so exclusive an appropriation. See *Martin & Goff* v. *Pepall*, 6 R. I. 92, 94. Nothing remains for the husband which he can really call his own. We think, therefore, that no husband who has married since December 2, 1872, or whose wife has acquired the property on which he claims the right to vote since December 2, 1872, can be entitled to vote under Article 2, Section 1, simply as tenant by marital right." The opinion held that the new statute did not retroact so as to destroy an estate by marital right previously acquired and thus disfranchise the tenant, and that therefore any person who had acquired a right to vote previous to December 2, 1872, as tenant by marital right, and, *a fortiori*, as tenant by the curtesy initiate, was not affected in his right by the new statute which then went into effect. The opinion then proceeds: "One other question remains to be considered, namely, can a husband who has married since December 2, 1872, or whose wife has acquired the property on which he claims the right to vote since December 2, 1872, be entitled to vote under Article 2, Section 1, if he has had issue by her capable of inheriting it? The new statute, Gen. Stat. R. I., cap. 152, § 14, provides that the right of the husband in the real estate of the wife as tenant by curtesy shall not be impaired. But this cannot mean that this right as tenant by the curtesy *initiate* shall not be impaired; for the absolute appropriation to the use of the wife necessarily excludes that right as well as the mere marital title. It means, doubtless, that tenancy by the curtesy, in its stricter sense, as consummate by the death of the wife, shall not be impaired."

The opinion then considers the question whether the right to vote is lost.

The statute remained unchanged in the Public Statutes, 1882, but appeared in its present form in the General Laws, 1896.

Under the provisions of the present statute, cap. 246, Gen. Laws, 1909, § 1, it is provided that the property of the

wife enumerated "shall be and remain her sole and separate property free from the control of her husband." We think this secures the property to her separate use as effectively as the words of cap. 152, § 1, Gen. Statutes, 1872, viz.: "shall be absolutely secured to her sole and separate use." The express provision that the property "shall not be liable to be attached, or in any way taken, for the debts of the husband" is not in the present statute. Section 12 of said chapter, however, provides that: "The wife or her property shall not be liable for the contracts or the torts of her husband." The provision of Section 8 that "The right of the husband in the real estate of the wife as tenant by the curtesy . . . shall not be impaired by the provision of this chapter," does not enlarge the right of tenancy by the curtesy beyond what it was under the statute under consideration, *In re* the Voting Laws, *supra*, where at page 593, the opinion says: "The new statute, Gen. Stat. R. I., cap. 152, § 14, provides that the right of the husband in the real estate of the wife as tenant by curtesy shall not be impaired. But this cannot mean that this right as tenancy by the curtesy *initiate* shall not be impaired; for the absolute appropriation to the use of the wife necessarily excludes that right as well as the mere marital title. It means, doubtless, that tenancy by the curtesy, in its stricter sense as consummate by the death of the wife, shall not be impaired."

We are of the opinion that under cap. 246, Gen. Laws, 1909, an estate of tenancy by the curtesy initiate is not attachable. As the defendant, Alfred A. Sanford, at the time of the attachment merely had an estate by the curtesy initiate, the plaintiff took nothing by his purchase at the execution sale of the right title interest and property which said Alfred A. Sanford had at the time of the attachment in the premises described in the declaration, and therefore acquired no title to said premises which will support this action of trespass and ejectment.

Decision for the defendants for costs. The papers in the case will be sent back to the District Court of the Second

Judicial District, with the decision of this court certified thereon, for further proceedings.

*Dexter B. Potter, Edward A. Stockwell,* for plaintiff.
*Frederick C. Olney, Harvey A. Baker,* for defendant.